UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA JONES, | |
| Plaintiff, | No. 18 C 1213 |
| v. | Judge Thomas M. Durkin |
| MEGAN J. BRENNAN, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Angela Jones has sued Megan J. Brennan, Postmaster General of the United States Postal Service ("USPS"), in a *pro se* complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act. Currently before the Court is Brennan's motion to dismiss or, in the alternative, for summary judgment for failure to exhaust administrative remedies (R. 15). For the foregoing reasons, the Court denies Brennan's motion.

**Background**

At the time of the events in her complaint, Jones worked as a mail processing clerk with the International Military Service Center Postal Service in Chicago. R. 19 at 8-10 (Jones's Response to Brennan's Rule 56.1 Statement) ¶ 1. In July 2016, Jones agreed to take a polygraph test as part of a workplace investigation into time card fraud. *Id.* ¶ 2. Immediately after the polygraph, a criminal investigator agent informed Jones that she had passed. R. 21 (Brennan's Response to Jones's Rule 56.1 Statement of Additional Facts) ¶ 7.

On or around September 16, 2016, Jones was denied a promotion to a supervisory position. R. 21 ¶ 8; R. 17-2 at 1. In response, Jones asked for the results of the polygraph test, and she was told that she would be given a pre-disciplinary interview by the acting plant manager. R. 19 ¶ 3.

Four days later, on September 20, 2016, Jones requested pre-complaint counseling by calling the Equal Employment Opportunity ("EEO") Contact Center; that same day, the EEO mailed Jones a letter acknowledging receipt of her request. R. 21 ¶ 3; R. 19 at 24 (Exhibit C to Jones's Statement of Additional Facts) ("This is to acknowledge receipt of your request for pre-complaint counseling under the Equal Opportunity Employment Process"); R. 20 at 2. USPS tracking reveals that Jones received this letter on September 24, 2016. R. 21 ¶ 3. The letter instructed Jones to "please complete, sign and date the above-referenced forms and return them within ten (10) calendar days from receipt of this package . . . . If the forms are not returned in 10 days, your request for EEO counseling may be cancelled. Timely completion and submission of the enclosed forms ensures prompt processing of your request for EEO counseling." R. 19 at 25.

Also on September 20, 2016, Jones mailed a copy of documents titled "Affidavits of Truth" containing complaints related to the polygraph and her denied promotion to upper managers at her job, a number of EEO representatives, and Brennan. R. 21 ¶ 1. Jones never received a response to her Affidavits, which Brennan says is because "[t]he 'Affidavits of Truth' sent by Jones did not comply

2

with the procedure clearly set forth in the [EEO] letter sent to Jones on September 20, 2016." *Id.* ¶ 2.

On October 7, 2016, Jones's son passed away. *Id.* ¶ 4. Jones states in her response brief that her son's passing was "unexpected and tragic"—and specifically, that he "was killed." R. 19 at 5. Jones's primary care physician opines that after her son's death, Jones "was expectantly mentally unstable and was not capable of continuing her complaint in a timely manner." R. 19 at 29 (Exhibit E to Jones's Statement of Additional Facts). He further opines that Jones "was totally mentally incapacitated from 10/07/16 through 10/11/16." *Id.*

On January 28, 2017, Jones reached out to EEOC and the Office of Federal Operations to ask about her continuing rights to pursue pre-complaint counseling. R. 21 ¶ 6. Jones explained that her delay had been due to her son's death. *Id.* Both agencies "responded and informed [Jones] that extension[s] were permitted under extenuating circumstances." *Id.* One response stated: "If you can show that you were incapacitated and unable to pursue your EEO matter in the regulatory time frames, the time limits may be waived." R. 19 at 31. The other simply stated, "Yes you can," and directed Jones to the appropriate EEOC form. *Id.* at 32.

On February 13, 2017, Jones submitted a new EEO pre-complaint form and proof of her son's death. R. 19 ¶ 4; R. 21 ¶ 9. Jones filed a formal EEO complaint on May 22, 2017, alleging discrimination and reprisal based on the following facts: (1) Jones was asked to take a polygraph test in July 2016; (2) Jones was informed that she would be given a disciplinary interview after she requested her polygraph test

3

on September 16, 2016; (3) Jones was removed from acting supervisor detail on an unspecified date; and (4) Jones was offered a supervisor position but then not given that position on or around September 16, 2016. R. 19 ¶ 5.

On June 9, 2017, the USPS dismissed Jones's complaint as untimely. *Id.* ¶ 6. Jones appealed that decision to the EEOC's Office of Federal Operations. The EEOC upheld USPS's decision on November 16, 2017, finding dismissal appropriate because "the last alleged discriminatory event occurred on September 16, 2016, but Complainant did not initiate contact with an EEO Counselor until February 13, 2017, which is beyond the forty-five (45) day limitation period" in 29 C.F.R. § 1614.105(a)(1). R. 19 ¶ 7; R. 17-3 at 3. The EEOC noted that Jones's "son passed away on October 7, 2016," based on which she "was unable to respond to the complaint packet she states she received on September 27, 2016." R. 17-3 at 3. The EEOC nevertheless found that "Complainant has presented no persuasive arguments or evidences warranting an extension of the time for initiating EEO counselor contact." *Id.* Jones filed this complaint on February 16, 2018. R. 1.

## Standard

Because both parties cite evidence outside the scope of the pleadings and filed fact statements under L.R. 56.1, the Court applies a summary judgment standard. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all

4

evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

Brennan argues that she is entitled to summary judgment on Jones's Title VII complaint because Jones failed to exhaust administrative remedies. "Before a federal civil servant can sue his employer in court for discriminating against him in violation of Title VII, he must first exhaust his administrative remedies." *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) (citing 42 U.S.C. § 2000e–16(c)). "To exhaust those remedies, the Equal Employment Opportunity Commission (EEOC) has promulgated regulations that require, among other things, that a federal employee consult with an EEO counselor prior to filing a discrimination lawsuit." *Id.* Specifically, she "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "This deadline is construed as a statute of limitations and not as a jurisdictional prerequisite." *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995).

5

It is clear that Jones failed to comply with the 45-day deadline set forth in 29 C.F.R. § 1614.105(a)(1). Jones made initial contact with the EEO on September 20, 2016—just four days after the September 16, 2016 conduct alleged to be discriminatory. But Brennan is correct that Jones's failure to "follow [this charge] to completion" by complying with the 10-day deadline for submitting forms set forth in the EEO's September 20, 2016 letter means that Jones's February 2017 contact was effectively a new EEO contact falling outside the 45-day limitations period. *See, e.g.*, *Atiogbe v. Brennan*, 2017 WL 2215017, at *4-5 (N.D. Ill. May 19, 2017) (holding that plaintiff's initial "contact [with] an EEO counselor" was "abandoned" when she did not comply with the 10-day response period, meaning her later contact was new and subject to the 45-day limit).

But the regulations expressly provide for tolling of "the 45-day time limit . . . when the individual shows [1] that he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, [3] that *despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits*, or [4] for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2) (emphasis added). The Seventh Circuit has explained that "[t]he 45 day statute of limitations is not reasonable if agencies and courts do not liberally construe [these] exceptions." *Johnson*, 47 F.3d at 917.

6

The Court finds that the undisputed evidence in this case meets the third justification for tolling set forth in the regulations: Jones being "prevented by circumstances beyond . . . her control from contacting the counselor" "despite due diligence." 29 C.F.R. § 1614.105(a)(2). The first component of this inquiry—circumstances beyond Jones's control preventing her from contacting the counselor—is supported by the undisputed fact of Jones's son's passing, along with the letter from Jones's physician. Brennan focuses only on the statement in Jones's physician's letter that Jones "was totally mentally incapacitated from 10/07/16 through 10/11/16." R. 19 at 29. But Brennan ignores the physician's further opinion that after her son's death, Jones "was expectantly mentally unstable and was not capable of continuing her complaint in a timely manner." *Id.* Even if Jones was "totally mentally incapacitated" only for a few days, the Court finds that the passing of her son—apparently in an unexpected and tragic way (*see* R. 19 at 4-5)—is a circumstance beyond Jones's control that reasonably prevented her from focusing on her employment dispute for a number of months after his passing. *Cf. Harris v. Potter*, 2004 WL 1613578, at *5-6 (E.D. Pa. July 16, 2004) (finding 45-day timeline tolled due to mental illness).

The Court further finds that Jones acted with "due diligence." 29 C.F.R. § 1614.105(a)(2). Both the September 20, 2016 letter Jones received from the "EEO Contact Center" "acknowledg[ing] receipt of [her] request for pre-complaint counseling" (R. 19 at 24) and Jones's September 20, 2016 Affidavits of Truth mailed to EEO representatives and Brennan show that she was in no way sleeping on her

7

rights. Then in January 2017, a few months after her son passed away, Jones re-initiated contact with the EEOC and Office of Federal Operations to ask about her continuing rights to pursue pre-complaint counseling, explaining that her delay had been due to her son's death. Both agencies "responded and informed [Jones] that extension[s] were permitted under extenuating circumstances." R. 21 ¶ 6. Shortly thereafter, Jones submitted her new EEO complaint. The Court finds that Jones acted diligently.

Implicitly recognizing that the September 20, 2016 letter attached to Jones's Statement of Additional Facts creates problems for Brennan's argument that Jones was not diligent, Brennan switches tacks on reply, focusing on the fact that Jones did not comply with the September 20, 2016 letter's 10-day deadline for completing forms. Brennan emphasizes that the USPS tracking indicates Jones received this letter on September 24, 2016, meaning that the 10-day deadline expired prior to the death of her son on October 7, 2016. But the letter itself states only that "[i]f the forms are not required in 10 days, your request for EEO counseling *may* be cancelled." R. 19 at 25 (emphasis added). Even after not meeting the 10-day deadline, Jones still would have had plenty of opportunity to re-initiate contact with the EEO within the 45-day regulatory period if it had not been for the death of her son. Jones's failure to comply with this interim requirement does not change this Court's overall conclusion that Jones was diligent and that tolling the 45-day period until February 2017 is appropriate in light of the death of Jones's son. Nor does Brennan claim or set forth any basis for a finding of prejudice based on this delay.

8

Indeed, the fact that Jones mailed Affidavits to Brennan and her supervisors on September 20, 2016 put them on notice of her potential claims very shortly after the underlying events took place.

In sum, the Court finds that "despite due diligence [Jones] was prevented by circumstances beyond . . . her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). Alternatively, the Court finds that Jones's son's tragic passing falls within the catchall provision for "other reasons considered sufficient" for tolling. *Id.* The Court therefore finds the 45-day deadline equitably tolled. This means that Jones exhausted administrative remedies as to her Title VII claims. *See Johnson*, 47 F.3d at 917.

## Conclusion

For the foregoing reasons, the Court denies Brennan's motion to dismiss, or in the alternative, for summary judgment (R. 15).

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 9, 2018