# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18 C 1213 ) |
| MEGAN J. BRENNAN, Postmaster General, United States Postal Service, | ) ) ) ) Judge Thomas M. Durkin |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Jones sued Megan J. Brennan, Postmaster General of the United States Postal Service ("USPS"), in a *pro se* complaint alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act. Currently before the Court is USPS's motion to quash subpoenas Jones served seeking information related to a polygraph examination. R. 43. For the following reasons, the Court grants USPS's motion.

## Background[1]

Jones worked as a mail processing clerk with the International Military Service Center Postal Service in Chicago at the time of the events giving rise to her complaint. In July 2016, Jones agreed to undergo a polygraph examination as part of

---

[1] Additional background facts are set forth in the Court's August 9, 2018 opinion denying USPS's motion to dismiss or, in the alternative, for summary judgment. R. 22.

1

a workplace investigation into time card fraud by the Postal Service Office of Inspector General ("OIG"), an independent unit within the USPS tasked in part with investigating internal crimes and fraud against USPS. *See* https://www.uspsoig.gov/investigations. OIG criminal investigator Daphanie McGee administered Jones's polygraph examination. According to Jones, McGee informed her immediately afterward that she had passed.

Jones alleges that she requested the results of her polygraph examination after she was demoted from her acting supervisor position. Jones was then told that she would be given a pre-disciplinary interview, and was subsequently denied a promotion. Ultimately, Jones filed this lawsuit alleging that USPS unlawfully discriminated against her on the basis of her race and sex, and gave her a pre-disciplinary interview and failed to promote her because she filed an EEO complaint and, of relevance here, sought the results of her polygraph examination.

During discovery, Jones obtained a copy of the OIG's time card fraud "Report of Investigation" dated August 23, 2016. According to USPS, Jones's supervisors also received a copy of this report at the close of the investigation. The report included a "Memorandum of Activity" summarizing the OIG's interviews with Jones. It also quoted the relevant polygraph questions asked and Jones's responses to those questions:

> I-A) Did you enter any of those clock rings for that lady for work she did not do? . . . "No"
>
> I-B) Did you enter any of those clock rings for that lady for work she did not do as we discussed? . . . "No"

R. 43-1 at 71. The report concluded:

> After an analysis of the physiological data collected during the polygraph examination, it was determined that there was insufficient physiological data to render an opinion. The polygraph examination was terminated at that time.

*Id.*

Jones also received a redacted copy of the OIG's time card fraud "Closing Memorandum" through discovery and separately in response to a Freedom of Information Act ("FOIA") request. OIG made redactions in large part because the information concerned third parties and was collected for law enforcement purposes. *See* R. 43-2 at 3, n. 1 and 2. The relevant unredacted portion of the memorandum stated:

> On July 14, 2016, USPS OIG polygraph examination revealed Jones' responses were analyzed for physiological data collected during the polygraph examination. It was determined that there was insufficient physiological data to render an opinion. The polygraph examination was terminated at that time. Jones finished with the examination and returned to work with no further inquiry into Jones' involvement within this investigation and was cleared of any allegation [sic].

R. 43-2 at 6. The memorandum concluded: "No further action is warranted at this time and this case will be closed." *Id.* at 7. According to USPS, this memorandum was an internal OIG document, and was not provided to any decisionmaker on Jones's applications for promotion.

Jones served subpoenas to OIG investigator McGee—who lives and works in North Carolina—for the production to Jones's Chicago home of "[a]ll questions, responses, results, notes taken and reports made on [Jones's] polygraph test," and for

McGee's deposition to be taken in Chicago on "[i]nformation concerning the polygraph test." R. 43-3, 43-4, 43-5.

When McGee failed to comply with the subpoenas, Jones filed motions to compel. During appearances before this Court in February, March and April on those motions, Jones argued that she was entitled to the raw data underlying the results of her polygraph test, including because the written summary results were inconsistent with McGee's statement immediately after her examination—that she had passed. Jones persisted even after learning that the raw results could not be read without the accompanying software and must be interpreted by a polygraph examiner, and were not available to the decisionmakers on any disciplinary action or her bid for promotion. USPS filed a motion to quash Jones's subpoenas, arguing that: (1) the information sought is protected by the law enforcement privilege; (2) the information sought is not relevant to Jones's claims; and (3) Jones's subpoenas fail to comply with the requirements of Federal Rule of Civil Procedure 45. *See generally* R. 43. Consistent with her arguments before the Court, Jones's written response brief focuses on obtaining the raw polygraph data. *See generally* R. 48.

## Analysis

### I. Relevance

USPS argues that the additional polygraph information Jones seeks is not relevant to her claims in this lawsuit, and that Jones is merely attempting to "re-litigate" her OIC time card fraud investigation. R. 43 at 1. USPS contends that the only relevant information regarding her polygraph examination is what was available

to Jones's supervisors (the decisionmakers in this case), which exonerates Jones from any time card fraud and which Jones already possesses. R. 43 at 6; R. 49 at 4-5.

In attempting to demonstrate the polygraph data's relevance, Jones asserts that: (1) the fact that she was asked to undergo the polygraph test was evidence of race and/or gender discrimination; (2) USPS used or altered the results to justify her demotion from her supervisory position; and (3) she was treated as though she was a target in the investigation (not merely a witness as USPS represents) and had failed the polygraph. R. 48 at 7-8.

The Court cannot fathom how additional information not available to Jones's supervisors has any bearing on her claim that she was not promoted because she requested her polygraph test results. As the Court explained at the hearings on her motions to compel, whether Jones actually passed her polygraph examination is simply not relevant to a claim that she was retaliated against for requesting her results.

And even assuming Jones's above allegations are part of her lawsuit, additional polygraph information still would not support her claims. It would not show that she was discriminated against for being *selected* to take the polygraph examination. Nor would it shed any light on how she was *treated*. And because the reports do not indicate deception, Jones's claim that her results were used or altered to justify employment-related decisions is not reasonable.

Accordingly, because Jones already possesses the evaluative summary of her polygraph examination, and because she has failed to demonstrate either during the

motion calls before this Court or in her response brief to USPS's motion how additional polygraph information that was not available to the decisionmakers at the time of any promotion or disciplinary decision is relevant to her claims, the Court grants USPS's motion to quash the subpoenas.[2]

## II. Law Enforcement Privilege

USPS also argues that its motion to quash may be granted because the information Jones seeks is protected by the law enforcement privilege. R. 43 at 4-6; R. 49 at 3-4. In response, Jones argues that the law enforcement privilege is not absolute and should not apply here because she "has a very high burden of proof" on her Title VII claims and the information sought is relevant to her case for the reasons outlined in Section I.

The purpose of the law enforcement privilege is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Ostrowski v. Holem*, 2002 WL 31956039, at *2 (N.D. Ill. Jan. 21, 2002) (quoting *Hernandez v. Longini*, 1997 WL 754041, at *3 (N.D. Ill. Nov. 13, 1997)). The privilege extends to polygraph examinations. *See Shah v. Dep't of Justice*, 714 Fed. Appx. 657, 659 (9th Cir. 2017) (law enforcement privilege applied to

---

[2] Jones also argues that the American Polygraph Association and FOIA require USPS to provide her with additional information related to her polygraph. However, because the Court has already determined that the additional information sought is not relevant to her claims in this case, the Court declines to address the merits of these arguments.

plaintiff's request for underlying polygraph data from Department of Justice); *see also Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) (polygraph information properly withheld under law enforcement privilege in FOIA case). It can also extend to investigations by the OIG. *See Otterson v. Nat'l R.R. Passenger Corp.*, 228 F.R.D. 205, 208-09 (S.D.N.Y. 2005) (law enforcement privilege applied to documents prepared by OIG in connection with investigation).

Jones is correct that the law enforcement privilege is a qualified one; indeed, it requires a balancing of the need for secrecy against the plaintiff's need for access. *Lepinka v. Vill. of Franklin Park*, 2004 WL 626830, at *2 (N.D. Ill. Mar. 26, 2004). In determining whether to apply the privilege, courts consider a variety of factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case.

*Kampien v. Individuals of Chicago Police Dep't*, 2002 WL 238443, at *4 (N.D. Ill. Feb. 19, 2002).

The Court finds factors 4 (whether the information sought is factual data or evaluative summary) and 10 (the importance of the information to plaintiff's case) determinative here. As discussed, the raw polygraph examination data sought is not relevant, and therefore not important, to Jones's claims in this case. Further, Jones already has the evaluative summary. Moreover, raw polygraph data and perhaps even the software that interprets it is a "law enforcement method" deserving of a heightened level of protection. *See Santiago*, 2010 WL 1257780, at *2 (privilege claim stronger when seeking to protect "confidential law enforcement methods and tactics as contrasted with simple interview materials"). Accordingly, the balance weighs in favor of applying the law enforcement privilege, and granting USPS's motion is also proper on that basis.

### III. Rule 45

Finally, USPS contends that Jones's subpoenas fail to comply with the requirements of Rule 45 because her subpoena for production requires McGee to produce the information in Chicago and her subpoena for deposition requires McGee to appear in Chicago, but McGee lives and is employed well over 100 miles away in North Carolina. FED. R. CIV. P. 45(c)(1)-(2). In response, Jones argues that McGee's residence is of unimportant because she need not appear for purposes of the production subpoena, she regularly comes to Chicago for work (and did so in order to conduct Jones's polygraph examination), and is within USPS's control in any event.

8

Because the Court has determined that Jones's subpoenas may be quashed for lack of relevance and for privilege, it need not also reach the issue of whether Jones's subpoenas comply with Rule 45 (and indeed, whether Jones must issue a subpoena to an OIG employee at all).

## Conclusion

For the foregoing reasons, the Court grants USPS's motion to quash Jones's subpoenas to Daphanie McGee. R. 43.

ENTERED:

*Thomas M Durkin*

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 29, 2019