UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 C 1213 |
| ) | |
| LOUIS DEJOY, ) | |
| Postmaster General, United States ) | |
| Postal Service, ) | Judge Thomas M. Durkin |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Jones sued the Postmaster General of the United States Postal Service ("USPS") in a *pro se* complaint alleging retaliation and discrimination based on her race and gender in violation of Title VII of the Civil Rights Act. Before the Court is USPS's motion for summary judgment. R. 58. For the following reasons, that motion is granted.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of

evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Local Rule 56.1

Local Rule 56.1 requires parties moving for summary judgment to submit in support of their motion a statement of material facts comprised of short numbered paragraphs with citations to admissible evidence, and a nonmovant to respond with particularity, providing citations to evidentiary material in the case of disagreement. L.R. 56.1(a), (b). If a nonmovant fails to controvert those facts in the manner proscribed, they are deemed admitted. *Id.*; *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). A plaintiff's *pro se* status does not excuse him or her from this requirement. *McNeil v. United States*, 508 U.S. 106, 113 (1993). USPS served Jones with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" explaining how to respond to USPS's summary judgment motion and Rule 56.1 Statement and cautioning Jones that the Court would deem USPS's factual contentions admitted if she failed to follow the procedures delineated in Local Rule 56.1. R. 62. But portions of Jones's response to USPS's Rule 56.1 Statement are riddled with argument, unsupported assertions, and in some cases factual allegations beyond those set forth in the paragraph to which she was responding. *See* PRSOF ¶¶ 4, 5, 8, 17, 22, and 24; *see also Campbell v. City of Chi.*, 2018 WL 4637377, at *1 (N.D. Ill. Sep. 27, 2018)

("Purely argumentative denials, legal conclusions, and unsupported general denials do not belong in Local Rule 56.1 Statements."); *Cichon v. Exelon Generation Co. LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005) (affirming district court's decision to ignore additional facts submitted in response to 56.1 statement). The Court thus credits USPS's version of the facts set forth in these paragraphs to the extent not disputed by Jones's own Local Rule 56.1 statement and evidentiary material, and deems the offending portions of those responses to be admissions. *Campbell*, 2018 WL 4637377 at *1; *Aberman v. Bd. of Educ. of Chi.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017).

Further, paragraphs 24-26 and 29 in Jones's own 56.1 Statement are improper because they contain legal argument and/or "lengthy stream[s] of consciousness . . . that are difficult for opposing counsel and the court to assess." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018-19 (N.D. Ill. 2018) (quoting *Cardoso v. Cellco P'ship*, 2014 WL 6705282, at *3 (N.D. Ill. Nov. 26, 2014)); *see also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (lengthy and/or immaterial statements of fact are improper); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) (legal arguments are improper in a 56.1 statement). The Court thus turns only to the facts set forth and supported by the parties' submissions in accordance with Local Rule 56.1.

## Background[1]

This case concerns events surrounding a timecard fraud investigation in which Jones contends that she was falsely accused but later exonerated. The following facts are undisputed unless otherwise noted.

***Employment history.*** Jones is an African American woman who has been employed by USPS since 2012. DSOF ¶ 1; PRSOF ¶ 1.[2] From 2012 until 2014, Jones worked at the International Military Service Center in Chicago ("ISC") as a temporary mail processing clerk. DSOF ¶¶ 2, 3; PRSOF ¶¶ 2, 3. Jones became a full-time mail clerk in 2014. DSOF ¶ 3, PRSOF ¶ 3. From January 2015 until March 2016, Jones served as an acting supervisor at ISC, a position she explained was temporary. DSOF ¶ 4; PRSOF ¶ 4. She thereafter worked as a mail clerk until she was promoted in September 2017 to her current supervisor position at the Busse postal facility in Elk Grove Village, Illinois. DSOF ¶ 1; PRSOF ¶ 1.

***OIG timecard fraud investigation.*** In February 2016, the Office of Inspector General ("OIG")—an independent unit within the USPS tasked with investigating internal crimes and fraud against USPS—commenced an investigation into whether ISC mail processing clerk Jessie Seals was involved in timecard fraud

---

[1] Additional background facts are set forth in the Court's August 9, 2018 opinion denying USPS's motion to dismiss or, in the alternative, for summary judgment, R. 22, and the Court's May 29, 2019 opinion granting USPS's motion to quash Jones's subpoenas for records related to the polygraph examination described below, R. 53.

[2] For purposes of this order, "DSOF" refers to USPS's 56.1 Statement of Facts at R. 60, and "PRSOF" to Jones's response thereto at R. 68; "PSOAF" refers to Jones's 56.1 Statement of Additional Facts at R. 68, and "DRPSOAF" refers to USPS's response thereto at R. 72. Further, Jones's response brief at R. 69 is referred to as "Pl.'s Opp. Brief."

for the benefit of co-worker Aisha Weems ("OIG investigation"). DSOF ¶ 8; PRSOF ¶ 8; https://www.uspsoig.gov/investigations. The investigation focused on whether Seals altered Weems's start and end times or gave Weems supervisory access to do so herself so that she would receive more pay than she earned. DSOF ¶ 8; PRSOF ¶ 8.

As part of its investigation, the OIG reviewed time and attendance records, emails and other documents, and interviewed Seals, Weems, Jones, ISC supervisor Shari Bright, and ISC manager Marvin Miller. DSOF ¶¶ 9, 11; PRSOF ¶¶ 9, 11. Jones, who claims she was interviewed because Bright falsely stated that she was involved with the fraud, was first interviewed on March 10, 2016. DSOF ¶ 9; PRSOF ¶ 9. Jones, Seals and Bright were each interviewed for a second time that May. DSOF ¶¶ 10, 11; PRSOF ¶¶ 10, 11. Jones subsequently asked OIG investigator Jay Francis not to interview her again. PSOAF ¶ 32; DRPSOAF ¶ 32. But on July 14, 2016 and after executing a consent form, Jones underwent a polygraph examination. DSOF ¶ 12; PRSOF ¶ 12. Seals also submitted to a polygraph examination. *Id.*

Jones testified that the OIG criminal investigator who administered her polygraph examination informed her immediately afterward that she had passed. PSOAF ¶ 40; DRPSOAF ¶ 40. The OIG concluded that there was insufficient physiological data to render an opinion about Jones's truthfulness based on her polygraph examination, but determined based on all the evidence that Jones "was being truthful . . . as it relate[d] to knowing or having knowledge" of wrongdoing by Weems, and "cleared" her of any wrongdoing. DSOF ¶ 13; PRSOF ¶ 13. On the other

5

hand, the OIG determined that Seals was "deceptive" regarding his knowledge and involvement in the timecard scheme. DSOF ¶ 14; PRSOF ¶ 14.[3] The OIG investigation was closed in April 2017. R. 68, Ex. 34 ¶ 1.

***EEO activity and other events surrounding the OIG investigation.*** On September 16, 2015, two days after the OIG first contacted Jones's supervisor, Ellen Spaulding, regarding a possible investigation into timecard fraud, Jones testified at her deposition that ISC manager Sung Kang selected her for promotion to a supervisor position. DSOF ¶ 6 and Ex. A at 59; PRSOF ¶ 6; R. 68, Ex. 2 (emails between Francis and Spaulding regarding date OIG investigation commenced). But Jones, who was serving as an acting supervisor at the time, testified further that later that month, Kang told her that "things happened" and she would need to reapply for the position. DSOF ¶¶ 6, 8 and Ex. A at 61; PRSOF ¶¶ 6, 8. USPS disputes this fact, pointing to Kang's deposition testimony in which he testified that his role was "not to promote," but rather to make a "recommendation for next level of the [promotion] process," and ISC Senior Plant Manager John Colao's deposition on written interrogatories in which he indicated that he had the ultimate responsibility to approve any selection, and that Jones "was not 'given' the position" because he "did not concur" that Jones was the best choice. DSOF ¶ 7 and Ex. C at 14 & Ex. D at 2; PRSOF ¶ 7.

Thereafter in March 2016 and shortly after the OIG investigation began in earnest, Jones was removed from her acting supervisor role. She filed an EEO claim

---

[3] Weems resigned before the investigation concluded. DSOF ¶ 9; PRSOF ¶ 9.

6

as a result ("March 2016 EEO claim"), but then withdrew it two weeks later. DSOF ¶ 5; PRSOF ¶ 5.

Jones filed another EEO claim in August 2016 ("August 2016 EEO claim"). DSOF ¶ 15; PRSOF ¶ 15. In it, she complained both about having been asked to take a polygraph examination, and that she had not been provided with the results, despite requesting them from various sources. DSOF ¶¶ 15, 16; PRSOF ¶¶ 15, 16. But Jones asserts that she withdrew her claim shortly thereafter because Spaulding told her that she would receive the polygraph results. DSOF ¶ 16; PRSOF ¶ 16.

Jones did not get the results, and on September 16, Spaulding attempted to schedule a pre-disciplinary interview ("PDI") with Jones to ask follow-up questions about the OIG investigation, the results of which she had received in August. DSOF ¶ 17; PRSOF ¶ 17; DRPSOAF ¶ 18. But Jones refused to participate in a PDI, and Spaulding did not pursue the matter further. R. 68, Ex. 3. Four days later on September 20, 2016, and still without a full copy of her polygraph results, Jones reinitiated EEO contact and requested pre-complaint counseling ("September 2016 EEO claim"). DSOF ¶ 18; PRSOF ¶ 18. Jones was sent a package of pre-EEO complaint forms to complete and return within 10 days. DSOF ¶ 19; PRSOF ¶ 19. But Jones's son died unexpectedly on October 7, and Jones ultimately did not return the forms or formally reinitiate EEO contact until February 2017 ("February 2017 EEO claim"), when she complained about the polygraph, the threatened PDI, the promotion rescission, and being removed from her acting supervisor role. DSOF ¶¶ 19, 20, Ex. J; PRSOF ¶¶ 19, 20.

7

Jones also requested to utilize REDRESS, USPS's alternative dispute resolution service. R. 68, Ex. 23. But EEO alternative dispute resolution specialist Eva Aguillon concluded that REDRESS mediation was not appropriate, because Spaulding—the person about whom Jones principally complained—was on assignment out of state. R. 68, Ex. 24. Accordingly, Aguillon told Jones that her EEO claim would be processed "in the traditional manner." *Id.*

Jones again requested pre-complaint EEO counseling that April, this time citing Aguillon's: (1) "refus[al] to do her job; (2) acting as though she were "advocating on management [sic] behalf"; and (3) conclusion that her complaint was not appropriate for mediation. R. 68, Exs. 25 and 26. Jones did not allege that Aguillon's actions were motivated by Jones's race, gender, or prior EEO activity, and USPS treated Jones's request as concerning her dissatisfaction with the processing of her February 2017 EEO claim. R. 68, Ex. 27 at 1. EEO Dispute Resolution Area Manager Raymond Valcaitis explained in a written response that such a complaint fell under his purview, and concluded that Aguillon had acted appropriately in processing her claims, having both discretion, and valid reasons, to deny REDRESS mediation, even though Jones may not like the result. *Id.*

Jones filed a formal EEO complaint on May 22, 2017 based on her February 2017 EEO claim ("2017 EEO Complaint"). DSOF ¶ 12 and Ex. K; PRSOF ¶ 21. Her complaint was dismissed thereafter because she sought pre-complaint counseling more than 45 days after the allegedly discriminatory acts. *Id.*; DSOF, Ex. L at 3.

8

***Jones's lawsuit.*** Jones then filed this action alleging as in her 2017 EEO Complaint that she was discriminated against based on her race and gender and retaliated against when: (1) she was asked to take a polygraph examination on July 14, 2016; (2) she was told on September 16, 2016 that she would receive a PDI; (3) she was removed from an acting supervisor position; and (4) she was offered a supervisor position that later was revoked ("principal claims"). DSOF ¶ 22; PRSOF ¶ 22. Jones also alleges that she was subject to a hostile work environment.

Prior to filing the current motion, USPS moved to dismiss, or in the alternative for summary judgment, arguing that Jones had failed to timely exhaust her administrative remedies. R. 15. The Court denied that motion based on its understanding that the promotion rescission about which she complained occurred on September 16, 2016, and the intervening death of her son on October 7, 2016 was a reason to toll the deadline by which she otherwise would have been required to reinitiate EEO contact on her claims. R. 22.

## Analysis

USPS argues that summary judgment is proper on each of Jones's claims because: (1) three of them were not timely brought before the administrative agency and therefore were not properly exhausted; and (2) Jones cannot establish a genuine issue of fact on any of them. The Court first analyzes whether Jones's claims were timely exhausted before determining whether any remaining claims may proceed to trial on their merits.

**I.      Exhaustion**

USPS argues at the outset that Jones's claims regarding the rescission of a promotion, removal from acting supervisor role, and taking a polygraph examination should all be dismissed as untimely. In response, Jones suggests that because the Court previously ruled that her claims were tolled due to the intervening death of her son, it may not consider the issue again here. But as explained below, the discovery that has occurred since makes it appropriate to revisit USPS's arguments. *See Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir. 1995) ("the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist.").

"Before a federal civil servant can sue his employer in court for discriminating against him in violation of Title VII, he must first exhaust his administrative remedies." *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) (citing 42 U.S.C. § 2000e–16(c)). "To exhaust those remedies, the Equal Employment Opportunity Commission (EEOC) has promulgated regulations that require, among other things, that a federal employee consult with an EEO counselor prior to filing a discrimination lawsuit." *Id.* Specifically, she "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The regulations provide for tolling of the 45-day time limit "when the individual shows [1] that he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, [3] that despite due diligence he or she was

10

prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [4] for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). The Court examines Jones's claims under these standards.

***Promotion rescission.*** As Jones concedes, the alleged promotion rescission at issue occurred in September 2015, not September 2016 as the Court understood when it initially tolled Jones's 45-day deadline to make EEO contact. *See* R. 22 at 4. In so holding, the Court relied on the intervening death of Jones's son on October 7, 2016, finding that it constituted a "circumstance[ ] beyond . . . [Jones's] control" within the meaning of 29 C.F.R. § 1614.105(a)(2). *Id.* at 9. But the undisputed evidence obtained since then demonstrates that this death, while undeniably tragic, occurred over a year after the alleged promotion rescission at issue, so tolling is not appropriate.

Nevertheless, Jones argues that her deadline should be tolled until July 14, 2016, the date of her polygraph and on which she says she first understood the link between the September 2015 promotion rescission and USPS's alleged discriminatory animus. But even assuming such tolling is appropriate, Jones still would have been required to contact an EEO officer by August 28, 2016 on this claim. And she did not.

***Removal from acting supervisor role.*** Jones's claim that she was removed from her acting supervisor role fares no better. Discovery revealed that Jones was removed from her position in March 2016. While she initially made (timely) contact with an EEO officer that same month, she later withdrew the claim. When Jones reinitiated EEO contact (in September 2016, and again in February 2017), it was not

11

timely. *See, e.g., Atiogbe v. Brennan*, 2017 WL 2215017, at *4-5 (N.D. Ill. May 19, 2017) (initial contact with EEO counselor was "abandoned" when plaintiff did not comply with the 10-day response period, meaning her later contact was new and subject to the 45-day limit). As with Jones's promotion rescission claim, this is so even if the Court were to toll her EEO deadline to the date of her polygraph as she urges.[4]

***Polygraph examination.*** Jones's claim regarding the July 14, 2016 polygraph examination is also barred. Jones points out that she initially filed a timely EEO claim concerning the polygraph examination in August 2016, and that she only withdrew that claim because her supervisor, Ms. Spaulding, had promised to provide her with a copy of her polygraph results. Jones claims that Spaulding's failure to keep that promise was the reason she reinitiated EEO contact, and argues that she should not be punished because that filing was not timely.

Presumably, Jones relies on the third justification for tolling under 29 C.F.R. § 1614.105(a)(2). That is, that she was "prevented by circumstances beyond . . . her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). But it is Jones's burden to demonstrate sufficient cause to extend the 45-day limitations period, and she must have first presented all facts supporting such an extension to the agency. *See id.* (indicating that the "agency or Commission shall extend the 45-day time limit . . . when the individual shows" one or more justifications

---

[4] Moreover, Jones expressly indicated during her deposition that this decision was not due to her race. And she presents no evidence to suggest that it was tied to her gender or previous EEO activity. Indeed, Jones indicated that she was aware of another individual who was removed from an acting supervisor role, and that person was male. *See* PRSOF ¶ 4 (referring to John Jackson).

12

for doing so); *see also Nicosia v. Mabus*, 2016 WL 4767537, at *2 (E.D.N.C. Sep. 13, 2016) ("a plaintiff seeking to extend the 45-day deadline under 29 C.F.R. § 1614.105(a)(2) first must have presented all facts supporting such an extension to the agency and may not raise new arguments for the first time in a judicial filing in federal court") (citing *Doe v. Brennan*, 980 F. Supp. 2d 730, 736 (E.D. Va. 2013)). The only justification Jones raised with the agency was the death of her son, which occurred after the expiration of the 45-day period. Therefore, there is no basis for tolling Jones's polygraph claim either.[5]

Accordingly, summary judgment is proper on Jones's claims regarding her September 2015 promotion rescission, March 2016 removal from acting supervisor role, and July 14, 2016 polygraph examination.

## II. Merits

USPS also argues that Jones's claims fail on the merits. Title VII forbids an employer from discriminating against an employee because of his race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Employers are also prohibited from retaliating against an employee who "filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Dep't. of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). A Title VII

---

[5] Further, Jones conceded at her deposition that she was not given the examination because of her race, and has presented no evidence to tie the fact that she was asked to take a polygraph to her prior EEO activity or her gender. In fact, the only other person to undergo a polygraph examination was male. And while Jones baldly asserts that another male employee, Marvin Miller, was not subjected to a polygraph because Spaulding is biased against women, there is no evidence that Spaulding played any role in determining how the OIG ran its investigation.

13

plaintiff's claim survives summary judgment if she presents evidence that, "considered as a whole," allows a reasonable jury to find that his protected characteristic or prior protected activity caused the complained-of action or inaction by the employer. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). One way in which a plaintiff can proceed is through the now-familiar *McDonnell Douglas* burden-shifting framework, under which she first must establish a prima facie case of discrimination, the employer then presents evidence of a non-discriminatory reason for its decision, and the burden ultimately shifts back to the plaintiff to establish that the employer's reason is pretextual. *See Volling v. Kurtz Paramed. Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (*McDonnell Douglas* is a "common, but not exclusive" method to establish a "triable issue of intentional discrimination"). To demonstrate a prima facie case of discrimination or retaliation under *McDonnell Douglas*, a plaintiff generally must show: (1) that she is a member of a protected class or engaged in protected activity; (2) that she was performing her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that similarly situated individuals who were outside her protected class or did not engage in protected activity were treated more favorably. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). But ultimately, and regardless of the method of proof used, all evidence is placed "in a single pile," and the question is "whether the evidence would permit a reasonable factfinder to conclude that [the plaintiff's] [protected class or activity] caused" the adverse action. *Ortiz*, 834 F.3d at 765-66. The Court addresses Jones's remaining claims in turn with these standards in mind.

14

***Pre-disciplinary interview.*** USPS argues that Jones's claim regarding a threatened PDI fails out of the gate because a PDI is not an adverse employment action. Jones offers no response. Accordingly, and because the Court agrees with USPS's argument in any case, summary judgment is proper on Jones's PDI claim both on its merits and because Jones waived the issue. *See Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (failure to respond to arguments results in waiver); *see also Lollis v. Donahue*, 2012 WL 33005, at *5 (N.D. Ill. Jan. 6, 2012) (a PDI "is not an adverse employment action as a matter of law").

***Race discrimination.*** USPS next argues that Jones's claims of race discrimination fail because she abandoned them, pointing to deposition testimony in which Jones states that her race did not play a role in any of her principal claims.[6] R. 71. In response, Jones contends that USPS simply failed to ask her about the claims she *did* believe were connected to her race. But it is not USPS's burden to establish a genuine issue of fact for trial. Instead, in the face of summary judgment, the plaintiff must "show what evidence [she] has that would convince a trier of fact to accept [her] version of events." *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014) (quoting *Steen*

---

[6] Jones testified as follows:

> Q: I asked you earlier about numbers one, two, and three, and for all three of them, you said that your race did not play a factor into either of those three events; is that correct?
>
> A: Yes.
>
> Q: Okay. And so now you are saying race also was not a factor in the fourth event or incident; is that correct?
>
> A: That's correct.

15

*v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)). But Jones only offers vague allegations of racially motivated conduct; she fails to identify the conduct with specificity, let alone support that it was based on impermissible animus. *See* PRSOF ¶ 24 (referring vaguely to "other complaints of race discrimination"); Pl.'s Opp. Brief at 7 (referring vaguely to her "other race issue"); *see also Bordelon*, 811 F.3d at 984 ("conclusory statements, not grounded in specific facts, are not sufficient"). Therefore, any claims of race discrimination fail.

***Claim processing.*** Jones also spends considerable energy complaining that her February 2017 EEO claim was not processed properly by ADR Specialist Eva Aguillon, and that Jones's April 2017 EEO claim regarding that processing was ignored. Jones asserts that Aguillon "maliciously" indicated in processing her February 2017 EEO claim that her delay in pursuing it was due to a "death in the family" rather than specifying that her son was killed, a fact that Jones believes would have been cause for tolling if it had been relayed. Pl.'s Opp. Brief, p. 5-6. But Jones offers no evidence that Aguillon's actions were motivated by impermissible animus. And in any case, the Court concluded that tolling is improper as to three of Jones's principal claims, and that the fourth fails on its merits as a matter of law.

Nor does the Court agree that Jones's April 2017 EEO was ignored. Indeed, EEO Dispute Resolution Area Manager Raymond Valcaitis responded to Jones's April 2017 EEO claim, indicating that Aguillon had acted appropriately and within her discretion when she denied Jones REDRESS mediation. And Jones fails to offer any evidence that Aguillon's denying Jones's request for mediation, or Valcaitis's

16

resolution of Jones's April 2017 EEO claim, were somehow tied to discriminatory or retaliatory animus. Accordingly, summary judgment is proper.

***Hostile work environment.*** Jones also complains that she was subject to a hostile work environment. To survive summary judgment, Jones must offer evidence that: "(1) the work environment was both objectively and subjectively hostile; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920. There is no evidence that any of the actions about which Jones complains—including the alleged rescission of a promotion, removal from an acting supervisor role, that she was subject to a polygraph examination, or that she was threatened with a PDI—were based on her membership in a protected class. Indeed, and as Jones herself acknowledges, these decisions were related to the OIG timecard fraud investigation or her request for polygraph results. *See* Pl.'s Opp. Brief at 9, 11-13. And while Jones vaguely asserts that there were other episodes of harassment, she fails to support her assertions with details or evidence.

Nor are the actions about which Jones specifically complains of the "severe or pervasive" or "objectively and subjectively hostile" nature required. Generally, conduct is severe or pervasive if it "creates an *abusive* relationship" that alters the conditions of employment. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) (emphasis in original). In examining whether a workplace is objectively hostile, courts consider (among other things)

17

"whether it is physically threatening or humiliating." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017). In sum, a hostile work environment is "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Jones's complaints do not rise to this level. *Cf. Huri*, 804 F.3d at 834 (screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment could may create a hostile work environment); *Alamo*, 864 F.3d at 550-552 (allegations concerning coworkers' use of offensive slurs, stealing plaintiff's food, and physically threatening plaintiff over a two-year period, as well as allegations that plaintiff routinely complained to his supervisors to no avail, were sufficient to survive motion to dismiss). Summary judgment is proper on Jones's hostile work environment claim.

## Conclusion

The Court understands that Jones may feel that her treatment in and around the OIG investigation was unjust. But "[a] court cannot interfere because an employer's decision is unwise or unfair." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014). Because Jones failed to exhaust many of her claims, and in addition, lacks evidence of impermissible animus to support any of them, USPS's motion for summary judgment is granted, R. 58, and this civil case is terminated.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 16, 2019